COPY

ORIGINAL
FILED

NOV 27 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3  San Francisco, CA  94111
   Telephone:  415/288-4545
4  415/288-4534 (fax)
   shawnw@lerachlaw.com
5       – and –
   WILLIAM S. LERACH (68581)
6  DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
7  655 West Broadway, Suite 1900
   San Diego, CA  92101
8  Telephone:  619/231-1058
   619/231-7423 (fax)
9  billl@lerachlaw.com
   darrenr@lerachlaw.com
10 travisd@lerachlaw.com

11 Attorneys for Plaintiff

12 [Additional counsel appear on signature page.]

E-Filing

EMC

13              UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

C 06 7274

15 INDIANA STATE DISTRICT COUNCIL OF )  No.
   LABORERS AND HOD CARRIERS           )
16 PENSION FUND, Derivatively on Behalf of )  VERIFIED SHAREHOLDER DERIVATIVE
   ELECTRONICS FOR IMAGING, INC.,      )  COMPLAINT FOR VIOLATION OF THE
17                                      )  FEDERAL SECURITIES LAWS AND
                         Plaintiff,     )  STATE LAW CLAIMS FOR BREACH OF
18                                      )  FIDUCIARY DUTY, ABUSE OF
        vs.                             )  CONTROL, CONSTRUCTIVE FRAUD,
19                                      )  CORPORATE WASTE, UNJUST
   GUY GECHT, FRED ROSENZWEIG, JOHN )  ENRICHMENT, GROSS
20 RITCHIE, JOSEPH CUTTS, GILL COGAN, )  MISMANAGEMENT, ACTION FOR
   JEAN-LOUIS GASSÉE, JAMES S. GREENE, )  ACCOUNTING AND VIOLATION OF
21 DAN MAYDAN, CHRISTOPHER B.          )  CALIFORNIA CORPORATIONS CODE
   PAISLEY and THOMAS I. UNTERBERG,    )
22                                      )
                      Defendants,       )
23                                      )
        – and –                         )
24                                      )
   ELECTRONICS FOR IMAGING, INC., a    )
25 Delaware corporation,               )
                                        )
26                    Nominal Defendant. )
                                        )  DEMAND FOR JURY TRIAL
27 _____ )

28

**NATURE OF THE ACTION**

1.      This is a shareholder derivative action brought by a shareholder of Electronics for Imaging, Inc. ("EFI" or the "Company") on behalf of the Company against its Board of Directors and certain of its senior executives (collectively, "Defendants").  This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement arising out of a scheme and wrongful course of business whereby Defendants allowed senior EFI insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to EFI insiders.  Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1997.

2.      Between fiscal 1997 and 2006, Defendants also caused EFI to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by EFI carried with them an exercise price that was *not less than* the fair market value of EFI stock on the date of grant and issuance.

3.      In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be *backdated* to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By mid-2006, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars, which contributed to Defendants' ability to sell over $49.7 million worth of EFI stock.

4.      EFI's financial results as reported and filed with the SEC were false.  Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law.  By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused EFI to issue false statements; (ii)

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 1 -

1    diverted hundreds of millions of dollars of corporate assets to senior EFI executives; and (iii)

2    subjected EFI to potential liability from regulators, including the SEC and the IRS.

3        5.      Defendants' gross mismanagement and malfeasance over the past decade has exposed

4    EFI and its senior executives to criminal and civil liability for issuing false and misleading financial

5    statements.   Specifically, Defendants caused or allowed EFI to issue statements that failed to

6    disclose or misstated the following: (i) that the Company had problems with its internal controls that

7    prevented it from issuing accurate financial reports and projections; (ii) that because of improperly

8    recorded stock-based compensation expenses, the Company's financial results violated Generally

9    Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public disclosures

10   presented an inflated view of EFI's earnings and earnings per share.

11       6.      Defendants' malfeasance and mismanagement during the relevant period has wreaked

12   hundreds of millions of dollars of damages on EFI.   The Company's senior executives were

13   incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

14   stock options and to issue false financial statements to cover up their misdeeds.   Defendants'

15   breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16   the plans with grant date manipulations so as to void all grants made pursuant to the plans.   The

17   Company has now been mentioned as one of several companies likely to have manipulated options.

18   Meanwhile, certain of the Defendants and former officers, who received under-priced stock options

19   and/or knew material non-public information regarding EFI's internal control problems, abused their

20   fiduciary relationship with the Company by selling over $49.7 million worth of their personally held

21   shares at artificially inflated prices during the relevant period. This action seeks recovery for EFI

22   against these faithless fiduciaries, as EFI's Board of Directors, as currently composed, is simply

23   unable or unwilling to do so.

24                          **INTRADISTRICT ASSIGNMENT**

25       7.      A substantial part of the events or omissions which give rise to the claims in this

26   action occurred in the county of San Mateo, and as such this action is properly assigned to the San

27   Francisco or Oakland division of this Court.

28

1

**JURISDICTION AND VENUE**

2      8.     The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C.

3 §78n(a), and under California and Delaware law for breach of fiduciary duty, abuse of control,

4 constructive fraud, corporate waste, unjust enrichment and gross mismanagement. In connection

5 with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly,

6 used the means and instrumentalities of interstate commerce, the United States mail and the facilities

7 of a national securities market.

8      9.     This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

9 U.S.C. §78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the

10 state law claims asserted herein pursuant to 28 U.S.C. §1367.

11     10.    This action is not a collusive one to confer jurisdiction on a court of the United States

12 which it would not otherwise have.

13     11.    Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa,

14 as well as 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and

15 dissemination of materially false and misleading information, occurred in substantial part in this

16 District. EFI is located in and conducts its business in this District. Further, Defendants conduct

17 business in this District, and certain of the Defendants are citizens of California and reside in this

18 District.

19

**PARTIES**

20     12.    Plaintiff Indiana State District Council of Laborers and HOD Carriers Pension Fund

21 is, and at relevant times was, a shareholder of nominal defendant EFI.

22     13.    Nominal party EFI is a Delaware corporation with its principal executive offices

23 located at 303 Velocity Way, Foster City, California.

24     14.    Defendant Guy Gecht ("Gecht") has served as Chairman of the Board of Directors

25 and Chief Executive Officer ("CEO") and a director of EFI since January 2000. Gecht served in a

26 variety of senior executive positions since joining the Company in 1995, including serving as

27 Director of Software Engineer of the Company from 1995 through January 1999, as Vice President

28 and General Manager, Server Products of EFI from January 1999 through July 1999, and as

1    President from July 1999 until his promotion in January 2000 to his current positions.  Because of

2    Gecht's positions, he knew the adverse non-public information about the business of EFI, as well as

3    its finances, markets and present and future business prospects, via access to internal corporate

4    documents, conversations and connections with other corporate officers and employees, attendance

5    at management and Board meetings and committees thereof and via reports and other information

6    provided to him in connection therewith.  During the relevant period, Gecht participated in the

7    issuance of false and/or misleading statements, including the preparation of the false and/or

8    misleading press releases and SEC filings.  Based on his knowledge of material non-public

9    information regarding the Company, defendant Gecht violated Cal. Corp. Code §§25402 and

10    25502.5 by selling 305,016 shares of EFI stock for proceeds of more than $7.8 million during the

11    relevant period.

12          15.     Defendant Fred Rosenzweig ("Rosenzweig") has served as President and a director of

13    EFI since January 2000.  Previously, Rosenzweig served in a variety of senior executive positions

14    since joining the Company in 1993, including serving as Executive Vice President from August

15    1998 through July 1999, and additionally as Chief Operating Officer from July 1999 through January

16    2004.  Because of Rosenzweig's positions, he knew the adverse non-public information about the

17    business of EFI, as well as its finances, markets and present and future business prospects, via access

18    to internal corporate documents, conversations and connections with other corporate officers and

19    employees, attendance at management and Board meetings and committees thereof and via reports

20    and other information provided to him in connection therewith.  During the relevant period,

21    Rosenzweig participated in the issuance of false and/or misleading statements, including the

22    preparation of the false and/or misleading press releases and SEC filings.  Based on his knowledge

23    of material non-public information regarding the Company, defendant Rosenzweig violated Cal.

24    Corp. Code §§25402 and 25502.5 by selling 333,400 shares of EFI stock for proceeds of $12 million

25    during the relevant period.

26          16.     Defendant John Ritchie ("Ritchie") was appointed Chief Financial Officer ("CFO")

27    of EFI in April 2006.  Previously, Ritchie served as Vice President of Finance of the Company from

28    January 2001 until his promotion to his current position in 2006.  Because of Ritchie's positions, he

1 knew the adverse non-public information about the business of EFI, as well as its finances, markets

2 and present and future business prospects, via access to internal corporate documents, conversations

3 and connections with other corporate officers and employees, attendance at management meetings

4 and via reports and other information provided to him in connection therewith. Defendant Ritchie,

5 by his specialized financial expertise, was in a unique position to understand the business of EFI, as

6 well as its finances, markets and present and future business prospects. During the relevant period,

7 Ritchie participated in the issuance of false and/or misleading statements, including the preparation

8 of the false and/or misleading press releases and SEC filings.

9       17.     Defendant Joseph Cutts ("Cutts") has been Chief Operating Officer ("COO") and

10 Corporate Secretary of EFI since April 2004. Additionally, Cutts had been CFO of the Company

11 from April 2000 until he relinquished this role in May 2006. Previously, Cutts served as Director of

12 Finance from 1997 through 1999 and as Vice President, Finance from 1999 through 2000. Because

13 of Cutts' positions, he knew the adverse non-public information about the business of EFI, as well as

14 its finances, markets and present and future business prospects, via access to internal corporate

15 documents, conversations and connections with other corporate officers and employees, attendance

16 at management meetings and via reports and other information provided to him in connection

17 therewith. Defendant Cutts, by his specialized financial expertise, was in a unique position to

18 understand the business of EFI, as well as its finances, markets and present and future business

19 prospects. During the relevant period, Cutts participated in the issuance of false and/or misleading

20 statements, including the preparation of the false and/or misleading press releases and SEC filings.

21 Based on his knowledge of material non-public information regarding the Company, defendant Cutts

22 violated Cal. Corp. Code §§25402 and 25502.5 by selling 255,796 shares of EFI stock for proceeds

23 of more than $6.9 million during the relevant period.

24       18.     Defendant Gill Cogan ("Cogan") has been a director of EFI since 1992. Because of

25 Cogan's position, he knew the adverse non-public information about the business of EFI, as well as

26 its finances, markets and present and future business prospects, via access to internal corporate

27 documents, conversations and connections with other corporate officers and employees, attendance

28 at Board meetings and committees thereof and via reports and other information provided to him in

1    connection therewith. As a member of the Compensation Committee, defendant Cogan controlled
2    the other Defendants' stock option awards. During the relevant period, Cogan participated in the
3    issuance of false and/or misleading statements, including the preparation of the false and/or
4    misleading press releases and SEC filings.

5          19.    Defendant Jean-Louis Gassée ("Gassée") has been a director of EFI since 1990.
6    Because of Gassée's position, he knew the adverse non-public information about the business of
7    EFI, as well as its finances, markets and present and future business prospects, via access to internal
8    corporate documents, conversations and connections with other corporate officers and employees,
9    attendance at Board meetings and committees thereof and via reports and other information provided
10   to him in connection therewith. During the relevant period, Gassée participated in the issuance of
11   false and/or misleading statements, including the preparation of the false and/or misleading press
12   releases and SEC filings. As a member of the Compensation Committee, defendant Gassée
13   controlled the other Defendants' stock option awards. As a member of the Nominating and
14   Corporate Governance Committee, defendant Gassée caused or allowed the dissemination of the
15   improper public statements described herein. Based on his knowledge of material non-public
16   information regarding the Company, defendant Gassée violated Cal. Corp. Code §§25402 and
17   25502.5 by selling 319,001 shares of EFI stock for proceeds of $11.1 million during the relevant
18   period.

19         20.    Defendant James S. Greene ("Greene") has been a director of EFI since 2000.
20   Because of Greene's position, he knew the adverse non-public information about the business of
21   EFI, as well as its finances, markets and present and future business prospects, via access to internal
22   corporate documents, conversations and connections with other corporate officers and employees,
23   attendance at Board meetings and committees thereof and via reports and other information provided
24   to him in connection therewith. As a member of the Audit and Nominating and Corporate
25   Governance Committees, defendant Greene caused or allowed the dissemination of the improper
26   public statements described herein. During the relevant period, Greene participated in the issuance
27   of false and/or misleading statements, including the preparation of the false and/or misleading press
28   releases and SEC filings. Based on his knowledge of material non-public information regarding the

1 Company, defendant Greene violated Cal. Corp. Code §§25402 and 25502.5 by selling 20,000
2 shares of EFI stock for proceeds of $466,456 during the relevant period.

3      21.      Defendant Dan Maydan ("Maydan") has been a director of EFI since 1996. Because
4 of Maydan's position, he knew the adverse non-public information about the business of EFI, as well
5 as its finances, markets and present and future business prospects, via access to internal corporate
6 documents, conversations and connections with other corporate officers and employees, attendance
7 at Board meetings and committees thereof and via reports and other information provided to him in
8 connection therewith.  As a member of the Audit and Nominating and Corporate Governance
9 Committees, defendant Maydan caused or allowed the dissemination of the improper public
10 statements described herein. During the relevant period, Maydan participated in the issuance of false
11 and/or misleading statements, including the preparation of the false and/or misleading press releases
12 and SEC filings.  Based on his knowledge of material non-public information regarding the
13 Company, defendant Maydan violated Cal. Corp. Code §§25402 and 25502.5 by selling 93,174
14 shares of EFI stock for proceeds of $3.3 million during the relevant period.

15      22.      Defendant Christopher B. Paisley ("Paisley") has been a director of EFI since 2004.
16 Because of Paisley's position, he knew the adverse non-public information about the business of
17 EFI, as well as its finances, markets and present and future business prospects, via access to internal
18 corporate documents, conversations and connections with other corporate officers and employees,
19 attendance at Board meetings and committees thereof and via reports and other information provided
20 to him in connection therewith. As a member of the Audit Committee, defendant Paisley caused or
21 allowed the dissemination of the improper public statements described herein. During the relevant
22 period, Paisley participated in the issuance of false and/or misleading statements, including the
23 preparation of the false and/or misleading press releases and SEC filings.

24      23.      Defendant Thomas I. Unterberg ("Unterberg") has been a director of EFI since 1990.
25 Because of Unterberg's position, he knew the adverse non-public information about the business of
26 EFI, as well as its finances, markets and present and future business prospects, via access to internal
27 corporate documents, conversations and connections with other corporate officers and employees,
28 attendance at Board meetings and committees thereof and via reports and other information provided

1  to him in connection therewith.  During the relevant period, Unterberg participated in the issuance of

2  false and/or misleading statements, including the preparation of the false and/or misleading press

3  releases and SEC filings.  Based on his knowledge of material non-public information regarding the

4  Company, defendant Unterberg violated Cal. Corp. Code §§25402 and 25502.5 by selling 179,000

5  shares of EFI stock for proceeds of $7.8 million during the relevant period.

6      24.    The defendants identified in ¶¶14-15 and 18-23 are referred to herein as the "Director

7  Defendants."  The defendants identified in ¶¶14-17 is referred to herein as the "Officer Defendants."

8  The defendants identified in ¶¶14-15, 17, 19-21 and 23 are referred to herein as the "Insider Selling

9  Defendants."

10                    **DEFENDANTS' DUTIES**

11     25.    Each officer and director of EFI named herein owed the Company and EFI

12  shareholders the duty to exercise a high degree of care, loyalty and diligence in the management and

13  administration of the affairs of the Company, as well as in the use and preservation of its property

14  and assets.  The conduct of EFI's directors and officers complained of herein involves knowing,

15  intentional and culpable violations of their obligations as officers and directors of EFI.  Further, the

16  misconduct of EFI's officers has been ratified by EFI's Board, which has failed to take any legal

17  action on behalf of the Company against them.

18     26.    By reason of their positions as officers, directors and fiduciaries of EFI and because

19  of their ability to control the business and corporate affairs of the Company, the Defendants owed

20  EFI and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to

21  use their ability to control and manage EFI in a fair, just, honest and equitable manner, and to act in

22  furtherance of the best interests of EFI and its shareholders so as to benefit all shareholders equally

23  and not in furtherance of their personal interest or benefit.  In addition, as officers and/or directors of

24  a publicly held company, the Defendants had a duty to refrain from utilizing their control over EFI to

25  divert assets to themselves via improper and/or unlawful practices.  Defendants also had a duty to

26  promptly disseminate accurate and truthful information with respect to the Company's operations,

27  earnings and compensation practices.

28

27.    Because of their positions of control and authority as directors or officers of EFI, each of the Defendants was able to and did, directly and indirectly, control the wrongful acts complained of herein.  As to the Director Defendants, these acts include: (i) agreement to and/or acquiescence in Defendants' option backdating scheme; (ii) willingness to cause EFI to disseminate false Proxy Statements for 1997-2006, which Proxy Statements failed to disclose Defendants' option backdating scheme and omitted the fact that executive officers were allowed to backdate their stock option grants in order to manipulate the strike price of the stock options they received.  Because of their positions with EFI, each of the Defendants was aware of these wrongful acts, had access to adverse non-public information and was required to disclose these facts promptly and accurately to EFI shareholders and the financial markets but failed to do so.

28.    Between 1997 and 2006, Defendants repeated in each Proxy Statement that the stock option grants made during that period carried an exercise price that was not less than the fair market value of EFI stock on the date granted, as calculated by the public trading price of the stock at the market's close on that date.  However, Defendants concealed until mid-2006 that the stock option grants were repeatedly and consciously *backdated* to ensure that the strike price associated with the option grants was at or near the lowest trading price for that fiscal period.  Due to Defendants' breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have the directors' and officers' plans voided and gains from those plans returned to the Company.  In the alternative, plaintiff seeks to have all of the unexercised options granted to defendants between 1997 and 2005 cancelled, the financial gains obtained via the exercise of such options returned to the Company and to have Defendants revise the Company's financial statements to reflect the truth concerning these option grants.

29.    To discharge their duties, the directors of EFI were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the business and financial affairs of EFI.  By virtue of such duties, the officers and directors of EFI were required, among other things, to:

(a) manage, conduct, supervise and direct the business affairs of EFI in accordance with all applicable law (including federal and state laws, government rules and regulations and the charter and bylaws of EFI);

(b) neither engage in self-dealing nor knowingly permit any officer, director or employee of EFI to engage in self-dealing;

(c) neither violate nor knowingly permit any officer, director or employee of EFI to violate applicable laws, rules and regulations;

(d) remain informed as to the status of EFI's operations, including its practices in relation to the cost of allowing the pervasive backdating and improperly accounting for such, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the U.S. federal securities laws and their duty of candor to the Company's shareholders;

(e) prudently protect the Company's assets, including taking all necessary steps to recover corporate assets (cash, stock options) improperly paid to Company executives and directors together with the related costs (professional fees) proximately caused by the illegal conduct described herein;

(f) establish and maintain systematic and accurate records and reports of the business and affairs of EFI and procedures for the reporting of the business and affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(g) maintain and implement an adequate, functioning system of internal legal, financial and accounting controls, such that EFI's financial statements – including its expenses, accounting for stock option grants and other financial information – would be accurate and the actions of its directors would be in accordance with all applicable laws;

(h) exercise control and supervision over the public statements to the securities markets and trading in EFI stock by the officers and employees of EFI; and

1         (i)    supervise the preparation and filing of any financial reports or other

2    information required by law from EFI and to examine and evaluate any reports of examinations,

3    audits or other financial information concerning the financial affairs of EFI and to make full and

4    accurate disclosure of all material facts concerning, *inter alia,* each of the subjects and duties set

5    forth above.

6        30.    Each Defendant, by virtue of his position as a director and/or officer, owed to the

7    Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due

8    care and diligence in the management and administration of the affairs of the Company, as well as in

9    the use and preservation of its property and assets.  The conduct of the Defendants complained of

10   herein involves a knowing and culpable violation of their obligations as directors and/or officers of

11   EFI, the absence of good faith on their part, and a reckless disregard for their duties to the Company

12   and its shareholders which Defendants were aware or should have been aware posed a risk of serious

13   injury to the Company.  The conduct of the Defendants who were also officers and/or directors of

14   the Company during the relevant period has been ratified by the Director Defendants who comprised

15   EFI's entire Board during the relevant period.

16       31.    Defendants breached their duties of loyalty and good faith by allowing or by

17   themselves causing the Company to misrepresent its financial results and prospects, as detailed

18   herein *infra,* and by failing to prevent the Defendants from taking such illegal actions.  As a result,

19   EFI has expended and will continue to expend significant sums of money.  Such expenditures

20   include, but are not limited to:

21       (a)    improvidently paid executive compensation;

22       (b)    increased capital costs as a result of the loss of market capitalization and the

23   Company's damaged reputation in the investment community;

24       (c)    costs incurred to carry out internal investigations and to prepare and file

25   restated financial statements, including legal fees paid to outside counsel; and

26       (d)    incurring possible IRS penalties for improperly reporting compensation.

27       32.    These actions have irreparably damaged EFI's corporate image and goodwill.  For at

28   least the foreseeable future, EFI will suffer from what is known as the "liar's discount," a term

1  applied to the stocks of companies who have been implicated in illegal behavior and have misled the

2  investing public, such that EFI's ability to raise equity capital or debt on favorable terms in the

3  future is now impaired.

4                 **AIDING AND ABETTING AND CONCERTED ACTION**

5        33.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in

6  the pursuit of a common course of conduct and acted in concert with one another in furtherance of

7  their common plan.

8        34.     During all times relevant hereto, Defendants collectively and individually initiated a

9  course of conduct which was designed to and did: (i) conceal the fact that the Company was

10  allowing its directors and senior officers to divert hundreds of millions of dollars to EFI insiders and

11  directors and causing EFI to misrepresent its financial results; (ii) maintain Defendants' executive

12  and directorial positions at EFI and the profits, power and prestige which Defendants enjoyed as a

13  result of these positions; (iii) deceive the investing public, including shareholders of EFI, regarding

14  Defendants' compensation practices and EFI's financial performance.

15        35.     The purpose and effect of Defendants' common course of conduct was, among other

16  things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross

17  mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning

18  the Company's operation and financial condition and to artificially inflate the price of EFI common

19  stock so they could dispose of millions of dollars of their own EFI stock, and enhance their executive

20  and directorial positions and receive the substantial compensation they obtained as a result thereof.

21        36.     Defendants accomplished their common enterprise and/or common course of conduct

22  by causing the Company to purposefully and/or recklessly engage in the option backdating scheme

23  alleged herein and misrepresent EFI's financial results.  Each of the Defendants was a direct,

24  necessary, and substantial participant in the common enterprise and/or common course of conduct

25  complained of herein.

26        37.     Each of the Defendants aided and abetted and rendered substantial assistance in the

27  wrongs complained of herein.  In taking such actions to substantially assist the commission of the

28  wrongdoing complained of herein, each Defendant acted with knowledge of the primary

1  wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

2  overall contribution to and furtherance of the wrongdoing.

3  <center>**BACKGROUND**</center>

4      38.    EFI manufactures digital controllers, format printers and inks, and print management

5  solutions for commercial and enterprise printing worldwide. The Company's controller products are

6  stand-alone servers that connect digital copiers with computer networks, embedded desktop

7  controllers, bundled solutions, and design-licensed solutions.  These controller products include

8  Fiery, Splash, Edox, and MicroPress color and black and white controller products used by corporate

9  reprographic departments, graphic arts, advertising agencies, transactional printers, commercial

10  printers, and office environments. The Company also provides the VUTEk line of inkjet printers

11  that use solvent inks and ultra violet curable inks.  These printers are used by billboard graphics

12  printers, commercial photo labs, large sign shops, digital graphics providers, building wraps,

13  banners, art exhibits, point of purchase signage, and other displays.  EFI's print management

14  solutions include software technology focused on printing workflow, print management information

15  systems, proofing and Web submission, and job tracking tools.

16      39.    Throughout the relevant period, Defendants caused EFI to grant them millions of

17  stock options permitting them to buy EFI stock for pennies on the dollar which they could in turn

18  sell as the Company's stock price increased.  A stock option gives the holder the right to buy a stock

19  at a certain price in the future.  Typically, companies set that price at the same time their directors

20  approve an option grant, with an exercise price – also known as the "strike price" – usually set at the

21  closing price of the stock that day, the closing price of the night before or by computing an average

22  of the high and low prices on the day of the vote.

23      40.    However, many of the millions of options granted to EFI's executives had a hidden,

24  valuable component: they were misdated, often making them even more significantly valuable. The

25  misdated stock option grants fell largely into three categories: (i) "look back" grants, in which the

26  date of the grant was picked retroactively (*e.g.,* a decision in February to pick a January date); (ii)

27  "wait and see" grants, in which a grant date was selected, but the decision was finalized – and

28  sometimes changed – at a later date (*e.g.,* a decision on January 1 to issue a grant on January 15, but

1  there is a period after January 15 in which the grantor waits to see if a more advantageous price

2  occurs and, if one does, uses that later date instead); and (iii) grants where there was a failure to

3  complete the option grant process by the date of the grant (*e.g.,* where there is a decision to issue a

4  grant as of a certain date, but after that date there are changes in the grantees or amounts to grantees,

5  and although the work is not complete on those grants as of the stated grant date, that date is

6  nonetheless used).

7                                        **STOCK OPTION GRANTS**

8          41.    Certain of EFI's manipulative stock option grants are described below:

9  **1997 Option Grants**

10         42.    Defendants dated all of EFI's 1997 option grants to top executives as of July 1, 1997

11 at $47.25 per share – the low of the month. The stock later reached $55.75 per share in July 1997.

12 Defendant Rosenweig and former officers Dan Avida and Jeffrey Lenches received 26,000, 90,000

13 and 26,000 options, respectively, at this $47.25 exercise price.

14 **1998 Option Grants**

15         43.    Defendants dated most of EFI's 1998 option grants to top executives as of August 4,

16 1998 at $13.75 per share – nearly the low of the year. The stock reached as high as $19.19 per share

17 in the month of August 1998. Defendant Rosenzweig and former officers Avida and Eric Saltzman

18 received 37,000, 100,000 and 30,000 options, respectively, at this $13.75 exercise price.

19 **1999 Option Grants**

20         44.    Defendants dated all of EFI's 1999 option grants to top executives as of March 23,

21 1999 at $33.81 per share – the low of the month. Moreover, these stock grants, like many of EFI's

22 other stock grants, came immediately before a large increase in the stock price. EFI's stock achieved

23 its stock price high of $41.56 for the month on March 26, 1999, only three trading days after the

24 grants were made – an increase of over 23% in three days. Defendants Gecht and Rosenzweig

25 received 110,000 and 110,000 options, respectively, at this $33.81 exercise price.

26 **2000 Option Grants**

27         45.    Defendants dated many of EFI's 2000 option grants to top executives as of January

28 31, 2000 at $45.19 per share – the low of the month and the low of the quarter. The stock traded as

1  high as $56.75 per share in January 2000. Defendants Cutts, Gecht and Rosenzweig received

2  45,000, 135,000 and 125,000 options, respectively, at this $45.19 exercise price. Defendants

3  subsequently repriced these options to $17.99 per share in October 2001 – demonstrating that there

4  was only upside for Defendants with respect to these options.

5  **2001 Option Grants**

6       46.    Defendants dated many of EFI's 2001 option grants to top executives as of January 3,

7  2001 at $13.75 per share – the low of the year. The stock traded as high as $22.94 per share in

8  January 2001. Defendants Gecht, Rosenzweig and Cutts received 175,000, 140,000 and 75,000

9  options, respectively, at this $13.75 exercise price.

10       47.    Below are several of EFI's grants which occurred right before significant stock price

11  increases:



SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    48.    Complicating matters and magnifying the harm to EFI, during the relevant period,

16  EFI's internal controls and accounting controls with respect to option grants and exercises, and its

17  financial reporting, were grossly inadequate.  The weaknesses allowed dates of both grants and

18  exercises to be manipulated and the Company's executive compensation expenses to be materially

19  understated.  They also allowed grant dates to be changed to provide executives with more favorably

20  priced options, in effect augmenting their compensation, with no benefit running to the Company.

21    49.    Specifically, in many instances the reported dates EFI stock options were granted

22  differed from the dates on which the options appear to have been actually granted.  The practice

23  applied to the overwhelming majority of stock option grants made during the relevant period, which

24  allowed executives and employees to make more money on their options because it set a lower

25  "strike price" at which the options could be exercised, allowing employees to take larger profits

26  when the stock price later rose. *In almost every case of misdating, the price of EFI shares on the*

27  *reported option-grant date was lower than the share price on the actual day the options were*

28  *issued.*

50.     Through their fiduciary duties of care, good faith and loyalty, Defendants owed to EFI a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company.   In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements.  This material non-public information included the problems EFI faced because of its deficient internal controls. Furthermore, Defendants who were members of the Audit Committee during the relevant period had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies.  Defendants Gecht, Rosenzweig, Ritchie and Cutts, as officers of EFI, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports.  Moreover, Defendants who were directors of EFI had ample opportunity to discuss this material information with fellow directors at any of the scores of Board meetings that occurred during the relevant period as well as at committee meetings of the Board.  Despite these duties, Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the misleading statements to be disseminated by EFI to the investing public and the Company's shareholders during the relevant period.

51.     Specifically, since 1997, Defendants have caused EFI to report false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings (or understated its losses) as follows:

| FISCAL YEAR | REPORTED OPERATING EARNINGS (LOSS) (IN MILLIONS) | REPORTED BASIC EARNINGS PER SHARE ON CONTINUING OPERATIONS |
|---|---|---|
| 1997 | $64.88 | $1.26 |
| 1998 | $47.82 | $0.87 |
| 1999 | $95.28 | $1.69 |
| 2000 | $54.36 | $1.38 |
| 2001 | $38.94 | $0.89 |
| 2002 | $15.97 | $0.40 |
| 2003 | $26.51 | $0.80 |
| 2004 | $38.02 | $0.67 |
| 2005 | $(4.07) | $1.10 |

52.    Moreover, throughout the relevant period certain of the Defendants and former officers exercised many of these stock options contributing to their ability to sell over $49.7 million worth of EFI stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| GECHT | 07/19/99-02/01/06 | 305,016 | $7,882,457 |
| ROSENZWEIG | 04/16/96-01/31/06 | 333,400 | $12,087,975 |
| CUTTS | 09/03/03-04/19/06 | 255,796 | $6,987,423 |
| GASSÉE | 02/28/96-09/19/06 | 319,001 | $11,149,822 |
| GREENE | 10/21/05 | 20,000 | $466,456 |
| MAYDAN | 07/28/97-02/06/06 | 93,174 | $3,310,636 |
| UNTERBERG | 10/15/96-01/23/97 | 179,000 | $7,842,350 |
| | | | |
| TOTAL | | 1,505,387 | $49,727,119 |

53.    In mid-2006, the Company came under scrutiny as numerous other companies admitted to or were investigated for stock option backdating. Then, on October 24, 2006, the Company filed a Form 8-K with the SEC announcing that it had commenced an internal investigation into the Company's past practices related to historical stock option grants.

54.    In effect, during the relevant period, the Defendants caused EFI's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, Defendants caused or allowed EFI to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses

the Company's financial results violated GAAP; and (iii) that the Company's public disclosures presented an inflated view of EFI's earnings and earnings per share.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

55.    Plaintiff brings this action derivatively in the right and for the benefit of EFI to redress injuries suffered and to be suffered by EFI as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement, corporate waste and unjust enrichment, as well as the aiding and abetting thereof, by the Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

56.    Plaintiff will adequately and fairly represent the interests of EFI and its shareholders in enforcing and prosecuting its rights.

57.    Plaintiff is an owner of EFI stock and was an owner of EFI stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

58.    Based upon the facts set forth throughout this Complaint, applicable law and the longstanding rule that equity does not compel a useless and futile act, a pre-filing demand upon the EFI Board of Directors to institute this action against the officers and members of the EFI Board of Directors is excused as futile. A pre-filing demand would be a useless and futile act because:

(a)    The members of EFI's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein. These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b)    The EFI Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from EFI's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, or conversations and connections with other

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 21 -

1  corporate officers, employees, and directors and attendance at management and/or Board meetings,

2  each of the Defendants knew the adverse non-public information regarding the improper stock

3  option grants and financial reporting. Pursuant to their specific duties as Board members, the

4  Director Defendants are charged with the management of the Company and to conduct its business

5  affairs. Defendants breached the fiduciary duties that they owed to EFI and its shareholders in that

6  they failed to prevent and correct the improper stock option granting and financial reporting. Certain

7  directors are also dominated and controlled by other directors and cannot act independently of them.

8  Thus, the EFI Board cannot exercise independent objective judgment in deciding whether to bring

9  this action or whether to vigorously prosecute this action because each of its members participated

10  personally in the wrongdoing or are dependent upon other Defendants who did.

11          (c)     The acts complained of constitute violations of the fiduciary duties owed by

12  EFI's officers and directors and these acts are incapable of ratification.

13          (d)     The members of EFI's Board have benefited, and will continue to benefit,

14  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

15  control and the perquisites derived thereof, and are incapable of exercising independent objective

16  judgment in deciding whether to bring this action.

17          (e)     Any suit by the current directors of EFI to remedy these wrongs would likely

18  further expose the liability of Defendants under the federal securities laws, which could result in

19  additional civil and/or criminal actions being filed against one or more of the Defendants, thus, they

20  are hopelessly conflicted in making any supposedly independent determination whether to sue

21  themselves.

22          (f)     EFI has been and will continue to be exposed to significant losses due to the

23  wrongdoing complained of herein, yet the current Board has not filed any lawsuits against itself or

24  others who were responsible for that wrongful conduct to attempt to recover for EFI any part of the

25  damages EFI suffered and will suffer thereby.

26          (g)     In order to properly prosecute this lawsuit, it would be necessary for the

27  directors to sue themselves and the other Defendants, requiring them to expose themselves and their

28

1    comrades to millions of dollars in potential civil liability and criminal sanctions, or IRS penalties.

2    This they will not do.

3             (h)      EFI's current and past officers and directors are protected against personal

4    liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

5    Complaint by directors' and officers' liability insurance which they caused the Company to purchase

6    for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of EFI.

7    However, due to certain changes in the language of directors' and officers' liability insurance

8    policies in the past few years, the directors' and officers' liability insurance policies covering the

9    Defendants in this case contain provisions which eliminate coverage for any action brought directly

10   by EFI against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As a

11   result, if these directors were to sue themselves or certain of the officers of EFI, there would be no

12   directors' and officers' insurance protection and thus, this is a further reason why they will not bring

13   such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such

14   insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

15            (i)      In order to bring this action for breaching their fiduciary duties, the members

16   of the EFI Board would have been required to sue themselves and/or their fellow directors and allies

17   in the top ranks of the Company, who are their personal friends and with whom they have entangling

18   financial alliances, interests and dependencies, which they would not do.

19       59.    Plaintiff has not made any demand on shareholders of EFI to institute this action since

20   such demand would be a futile and useless act for the following reasons:

21            (a)      EFI is a publicly traded company with over 56 million shares outstanding, and

22   thousands of shareholders;

23            (b)      Making demand on such a number of shareholders would be impossible for

24   plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

25            (c)      Making demand on all shareholders would force plaintiff to incur huge

26   expenses, assuming all shareholders could be individually identified.

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 23 -

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT
## ON EFI'S FINANCIAL STATEMENTS

**The Fiscal 1997 Form 10-K**

On or about March 31, 1998, the Company filed its fiscal 1997 Form 10-K with the SEC. The fiscal 1997 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1997 Form 10-K included EFI's fiscal 1997 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, EFI's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1998 Form 10-K**

On or about March 18, 1999, the Company filed its fiscal 1998 Form 10-K with the SEC. The fiscal 1998 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1998 Form 10-K included EFI's fiscal 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, EFI's compensation expense was understated and its net earnings were overstated.

**The Fiscal 1999 Form 10-K**

60.    On or about March 17, 2000, the Company filed its fiscal 1999 Form 10-K with the SEC. The fiscal 1999 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 1999 Form 10-K included EFI's fiscal 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the backdated stock options. As a result, EFI's compensation expense was understated and its net earnings were overstated.

**The Fiscal 2000 Form 10-K**

61.    On or about March 29, 2001, the Company filed its fiscal 2000 Form 10-K with the SEC. The fiscal 2000 Form 10-K was simultaneously distributed to shareholders and the public. The fiscal 2000 Form 10-K included EFI's fiscal 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to its improper accounting for the

1  backdated stock options.  As a result, EFI's compensation expense was understated and its net
2  earnings were overstated.

3  **The Fiscal 2001 Form 10-K**

4        62.      On or about March 29, 2002, the Company filed its fiscal 2001 Form 10-K with the
·5  SEC.  The fiscal 2001 Form 10-K was simultaneously distributed to shareholders and the public.
6  The fiscal 2001 Form 10-K included EFI's fiscal 2001 financial statements which were materially
7  false and misleading and presented in violation of GAAP, due to its improper accounting for the
8  backdated stock options.  As a result, EFI's compensation expense was understated and its net
9  earnings were overstated.

10  **The Fiscal 2002 Form 10-K**

11        63.      On or about March 31, 2003, the Company filed its fiscal 2002 Form 10-K with the
12  SEC.  The fiscal 2002 Form 10-K was simultaneously distributed to shareholders and the public.
13  The fiscal 2002 Form 10-K included EFI's fiscal 2002 financial statements which were materially
14  false and misleading and presented in violation of GAAP, due to improper accounting for the
15  backdated stock options.  As a result, EFI's compensation expense was understated and its net
16  earnings were overstated.

17  **The Fiscal 2003 Form 10-K**

18        64.      On or about March 15, 2004, the Company filed its fiscal 2003 Form 10-K with the
19  SEC.  The fiscal 2003 Form 10-K was simultaneously distributed to shareholders and the public.
20  The fiscal 2003 Form 10-K included EFI's fiscal 2003 financial statements which were materially
21  false and misleading and presented in violation of GAAP, due to improper accounting for the
22  backdated stock options.  As a result, EFI's compensation expense was understated and its net
23  earnings were overstated.

24  **The Fiscal 2004 Form 10-K**

25        65.      On or about March 15, 2005, the Company filed its fiscal 2004 Form 10-K with the
26  SEC.  The fiscal 2004 Form 10-K was simultaneously distributed to shareholders and the public.
27  The fiscal 2004 Form 10-K included EFI's fiscal 2004 financial statements which were materially
28  false and misleading and presented in violation of GAAP, due to improper accounting for the

1  backdated stock options.  As a result, EFI's compensation expense was understated and its net
2  earnings were overstated.

3  **The Fiscal 2005 Form 10-K**

4      66.     On or about March 16, 2006, the Company filed its fiscal 2005 Form 10-K with the
5  SEC.  The fiscal 2005 Form 10-K was simultaneously distributed to shareholders and the public.
6  The fiscal 2005 Form 10-K included EFI's fiscal 2005 financial statements which were materially
7  false and misleading and presented in violation of GAAP, due to improper accounting for the
8  backdated stock options.  As a result, EFI's compensation expense was understated and its net
9  earnings were overstated.

10                    **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

11      67.     The 1997-2006 Proxy Statements concealed Defendants' option backdating scheme.
12  Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on
13  proxy proposals between 1997 and 2006.  In fact, it was not until mid-2006, when the Company
14  came under scrutiny as numerous other companies admitted to or were investigated for stock option
15  backdating, and late October 2006, when the Company filed a Form 8-K with the SEC announcing
16  that it had commenced an internal investigation into the Company's past practices related to
17  historical stock option grants, that shareholders learned that the Proxy Statements which they had
18  relied upon for years were false and misleading.  Defendants have been unjustly enriched at the
19  expense of EFI, which has received and will receive less money from the Defendants when they
20  exercise their options at prices substantially lower than they would have if the options had not been
21  backdated.

22      68.     Each dollar diverted to Defendants via the option backdating scheme has come at the
23  expense of the Company.  For example, if Gecht's 175,000 options granted in 2001 had not been
24  manipulated, but rather had a strike price of $20 per share, which was the trading price only days
25  after the options grant date, instead of the $13.75 per share strike price, which was the trading low
26  for the month, when Gecht exercised those options the Company would receive $3.5 million instead
27  of $2.4 million – *a cost to the Company of $1.1 million for this single instance of option*
28  *backdating.*

## THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

69.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions.  Given the many times EFI's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

70.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of EFI, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

## TOLLING OF THE STATUTE OF LIMITATIONS

71.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring EFI's public investors that EFI's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

72.     EFI's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until mid-2006, when the Company came under scrutiny as numerous other companies admitted to or were investigated for stock option backdating.  Then, on October 24, 2006, the Company filed a Form 8-K with the SEC announcing that it had commenced an internal investigation into the Company's past practices related to historical stock option grants.

73.     Finally, as fiduciaries of EFI and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from EFI's public shareholders the facts that give rise to the claims asserted herein, *i.e.*, that the EFI Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been

manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

## COUNT I

### Violations of §14(a) of the Exchange Act Against
### All Defendants

74.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

75.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

76.     The 1997-2006 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that certain of the Defendants were causing EFI to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1997.

77.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

78.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

79.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Accounting

80.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

81.     At all relevant times, Defendants, as directors and/or officers of EFI, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

82.     In breach of their fiduciary duties owed to EFI and its shareholders, the Defendants caused EFI, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of EFI and/or failed to properly investigate whether these grants had been improperly made.  By this wrongdoing, the Defendants breached their fiduciary duties owed to EFI and its shareholders.

83.     The Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to certain of the Defendants.

84.     As a result of Defendants' misconduct, EFI has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

85.     Plaintiff demands an accounting be made of all stock option grants made to any of the Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to any of the Defendants, as well as the disposition of any proceeds received by any of the Defendants via sale or other exercise of backdated stock option grants received by those Defendants.

## COUNT III

### Breach of Fiduciary Duty and/or Aiding and Abetting
### Against All Defendants

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     Each of the Defendants agreed to and did participate with Gecht and Cutts and the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

88.     The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to EFI and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of EFI and its shareholders.

89.     As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to EFI and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

90.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward EFI and its public shareholders.

91.     As a proximate result of Defendants' conduct, in concert with Gecht and Cutts, EFI has been injured and is entitled to damages.

## COUNT IV

### Abuse of Control Against All Defendants

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

93.     The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, EFI, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at EFI.  As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding EFI.

94.     Defendants' conduct constituted an abuse of their ability to control and influence EFI.

95.     By reason of the foregoing, EFI has been damaged.

**COUNT V**

**Gross Mismanagement Against All Defendants**

96.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

97.    Defendants had a duty to EFI and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of EFI.

98.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of EFI in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of EFI's affairs and in the use and preservation of EFI's assets.

99.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused EFI to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to EFI, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged EFI.

100.    By reason of the foregoing, EFI has been damaged.

**COUNT VI**

**Constructive Fraud Against All Defendants**

101.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

102.    As corporate fiduciaries, Defendants owed to EFI and its shareholders a duty of candor and full accurate disclosure regarding the true state of EFI's business and assets and their conduct with regard thereto.

103.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from EFI's shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of EFI.  Thus they have committed constructive fraud and violated their duty of candor.

1    104.    By reason of the foregoing, EFI has been damaged.

2                                    **COUNT VII**

3                    **Corporate Waste Against All Defendants**

4    105.    Plaintiff incorporates by reference and realleges each and every allegation set forth

5    above, as though fully set forth herein.

6    106.    By failing to properly consider the interests of the Company and its public

7    shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

8    Defendants via the option backdating scheme, Defendants have caused EFI to waste valuable

9    corporate assets.

10    107.    As a result of Defendants' corporate waste, they are liable to the Company.

11                                    **COUNT VIII**

12                    **Unjust Enrichment Against All Defendants**

13    108.    Plaintiff incorporates by reference and realleges each and every allegation set forth

14    above, as though fully set forth herein.

15    –    109.    As a result of the conduct described above, Defendants will be and have been unjustly

16    enriched at the expense of EFI, in the form of unjustified salaries, benefits, bonuses, stock option

17    grants and other emoluments of office.

18    110.    All the payments and benefits provided to the Defendants were at the expense of EFI.

19    The Company received no benefit from these payments.  EFI was damaged by such payments.

20    111.    Certain of the Defendants sold EFI stock for a profit during the period of deception,

21    misusing confidential non-public corporate information.  These Defendants should be required to

22    disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of EFI.  A

23    constructive trust for the benefit of the Company should be imposed thereon.

24                                    **COUNT IX**

25                    **Against the Officer Defendants for Rescission**

26    112.    Plaintiff incorporates by reference and realleges each and every allegation contained

27    above as though fully set forth herein.

28

113.    As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and EFI entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by EFI shareholders and filed with the SEC.

114.    All contracts which provide for stock option grants between the Officer Defendants and EFI and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT X

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

115.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

116.    At the time that the Insider Selling Defendants sold their EFI common stock as set forth herein at ¶52, by reason of their high executive and/or directorial positions with EFI, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of EFI's improper accounting.

117.    At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of EFI shares at that time.

118.    The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their EFI common stock in California in violation of California Corporations Code §25402.

119.    Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to EFI for damages in an amount up to three times the difference

between the price at which EFI common stock was sold by these defendants, and each of them, and the market value which that EFI common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

<div align="center">

**COUNT XI**

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

</div>

120.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

121.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold EFI common stock on the basis of such information.

122.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold EFI common stock.

123.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of EFI common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

124.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, plaintiff demands judgment as follows:

A.   Awarding money damages against all Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, to ensure Defendants do not participate therein or benefit thereby;

B.    Directing all Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and imposing a constructive trust thereon;

C.    Directing EFI to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

(i)    a proposal requiring that the office of CEO of EFI and Chairman of the EFI Board of Directors be permanently held by separate individuals and that the Chairman of the EFI Board meets rigorous "independent" standards;

(ii)    a proposal to strengthen the EFI Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)    appropriately test and then strengthen the internal audit and control function;

(iv)    rotate independent auditing firms every five years;

(v)    control and limit insider stock selling and the terms and timing of stock option grants; and

(vi)    reform executive compensation.

D.    Ordering the imposition of a constructive trust over Defendants' stock options and any proceeds derived therefrom;

E.    Awarding punitive damages;

F.    Awarding costs and disbursements of this action, including reasonable attorneys', accountants', and experts' fees; and

G.    Granting such other and further relief as this Court may deem just and proper.

1

<div align="center"><b>JURY DEMAND</b></div>

2          Plaintiff demands a trial by jury.

3   DATED: November 27, 2006                      LERACH COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
4                                                  SHAWN A. WILLIAMS

5

6                                                  _____
                                                          SHAWN A. WILLIAMS
7
                                                   100 Pine Street, Suite 2600
8                                                  San Francisco, CA 94111
                                                   Telephone: 415/288-4545
9                                                  415/288-4534 (fax)

10                                                 LERACH COUGHLIN STOIA GELLER
                                                    RUDMAN & ROBBINS LLP
11                                                 WILLIAM S. LERACH
                                                   DARREN J. ROBBINS
12                                                 TRAVIS E. DOWNS III
                                                   655 West Broadway, Suite 1900
13                                                 San Diego, CA 92101-3301
                                                   Telephone: 619/231-1058
14                                                 619/231-7423 (fax)

15                                                 CAVANAGH & O'HARA
                                                   WILLIAM K. CAVANAGH, JR.
16                                                 407 East Adams Street
                                                   Springfield, IL 62701
17                                                 Telephone: 217/544-1771
                                                   217/544-9894 (fax)
18
                                                   Attorneys for Plaintiff
19   S:\CptDraft\Derivative\Cpt Electronics for Imaging Derv.doc

20

21

22

23

24

25

26

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 36 -

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2      Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3 named parties, there is no such interest to report.

4

5

6      ATTORNEY OF RECORD FOR PLAINTIFF
INDIANA STATE DISTRICT COUNCIL OF
7      LABORERS AND HOD CARRIERS PENSION
FUND

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, SHAWN A. WILLIAMS, hereby declare as follows:

1.      I am a member of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.      I make this Verification because plaintiff is absent from the County of San Francisco where I maintain my office.

Executed this 27th day of November, 2006 at San Francisco, California.

_____

SHAWN A. WILLIAMS